UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

TINA M. MUNIZ,

          Plaintiff,

    v.

KILOLO KIJAKAZI,

          Defendant.

Case No.   5:22-cv-02074-EJD

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING COMMISSIONER'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: ECF Nos. 14, 19

Plaintiff Tina M. Muniz ("Plaintiff") brings this civil action pursuant to 42 U.S.C. § 405(g) to obtain review of the Social Security Administration Commissioner's (the "Commissioner") partially favorable decision finding Plaintiff disabled beginning on December 11, 2020.

Before the Court is Plaintiff's motion for summary judgment seeking a finding of disability and an award of benefits for the period of September 16, 2017 to December 10, 2020.  *See* ECF No. 14-1 ("MSJ").  The Commissioner opposes Plaintiff's motion and filed a cross-motion for summary judgment seeking that the Court affirm the Commissioner's final decision.  *See* ECF No. 19 ("Cross-MSJ").  For the reasons discussed below, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion and DENIES the Commissioner's cross-motion.

## I.      BACKGROUND

On December 5, 2017, Plaintiff filed applications for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") disability benefits pursuant to Titles II and XVI of the Social Security Act.  ECF Nos. 12-2–12-25, Transcript of Administrative Record ("Tr.") 213–24, 216–24.  Plaintiff's disability began on September 6, 2017.  Tr. 214, 216.

United States District Court
Northern District of California

1   Plaintiff was 46 years old at the time.  Plaintiff alleged that she was unable to work due to

2   fibromyalgia, chronic pain, depression, CTS, and arthritis.  Tr. 149.

3          On March 9, 2018, the Social Security Administration ("SSA") denied Plaintiff's SSI and

4   SSDI claims.  Tr. 140–44.  Plaintiff requested reconsideration of the decisions on April 25, 2018.

5   Tr. 148.  On review, the SSA again denied SSI disability benefits, finding that Plaintiff's medical

6   evidence shows that "[her] condition results in some limitations in [her] ability to perform work

7   related activities" but that it "is not severe enough to keep [her] from working."  Tr. 149–53.

8   Plaintiff timely requested a hearing following denial of reconsideration.  Tr. 156–58.

9          An administrative hearing was held on September 17, 2019 before Administrative Law

10   Judge ("ALJ") Ruxana Meyer.  Tr. 172.  On October 22, 2019, Plaintiff received an unfavorable

11   decision.  Tr. 12–28.  The ALJ determined that Plaintiff could perform light work, except standing

12   and walking, for 4 hours per day despite Plaintiff's impairments of chronic pain, carpel tunnel, and

13   arthritis.  Tr. 22, 25.  This decision was based on the ALJ's finding that, although the medical

14   evidence supports that Plaintiff has severe impairments, it does not support the degree of

15   limitation alleged.  Tr. 22–23.

16          Plaintiff initiated a civil action before Magistrate Judge Ryu, Case No. 4:20-CV-05848

17   and, on May 26, 2021, the court granted the stipulation between Plaintiff and the Commissioner to

18   remand the matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  Tr.

19   1403–05.  The Appeals Council accordingly vacated the Commissioner's final decision and

20   remanded Plaintiff's case to an ALJ.  Tr. 1408–09.  The hearing was held on November 2, 2021,

21   after which ALJ Meyer issued a partially favorable decision on December 8, 2021.  Tr. 1308–29,

22   1443, 1448.  The ALJ determined that Plaintiff has been disabled since December 11, 2020, but

23   not prior to the established disability onset date.  Tr. 1328.  Because Plaintiff's medical provider

24   deemed Plaintiff capable of returning to work on July 7, 2021, a continuing disability review was

25   recommended in 18 months' time.  Tr. 1329.

26          On March 31, 2022, Plaintiff commenced this action pursuant to §§ 405(g), 1383(c)

27   Case No.: 5:22-cv-02074-EJD

28   ORDER GRATING IN PART & DEN. IN PART PL.'S MOT. FOR SUMM. J.; DEN.
COMMISSIONER'S CROSS-MOT. FOR SUMM. J.

1    seeking reversal or remand of the Commissioner's decision and arguing that the findings are not

2    supported by substantial evidence.  ECF No. 1.

3    **II.    LEGAL STANDARD**

4        **A.    Standard of Review**

5        The Social Security Act authorizes a district court to review decisions made by the

6    Commissioner.  42 U.S.C. § 405(g).  A court has jurisdiction over social security appeals when a

7    plaintiff files the appeal within 60 days.  42 U.S.C. § 405(g).  The court's jurisdiction, however, is

8    limited.  *Brown-Hunter* v. *Colvin*, 806 F. 3d 487, 492 (9th Cir. 2015).  A district court may only

9    reverse the decision if it is not supported by substantial evidence or if the decision was based on

10   legal error.  *Id.*; *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

11       "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas*,

12   278 F. 3d at 954 (citing *Jamerson v. Chater*, 112 F. 3d 1064, 1066 (9th Cir. 1997)).  This standard

13   requires relevant evidence that a "[r]easonable mind might accept as adequate to support a

14   conclusion." *Vertigan*, 260 F.3d at 1049 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

15   "Where the evidence is susceptible to more than one rational interpretation, one of which supports

16   the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.   However,

17   if legal error occurred in the administrative process or if the administrative decision is not

18   supported by substantial evidence, the decision may be set aside. *Treviso v. Berryhill*, 871 F.3d

19   664, 676 (9th Cir. 2017).

20       **B.    Standard for Determining Disability**

21       Disability is the "inability to engage in any substantive gainful activity by reason of any

22   medically determinable physical or mental impairment which can be expected to result in death or

23   which has lasted or can be expected to last for a continuous period of not less than twelve

24   months." 42 U.S.C. § 423(d)(1)(A).  The impairment must be so severe that an applicant is unable

25   to do her previous work, and cannot "engage in any other kind of substantial gainful work which

26   exists in the national economy," given the applicant's age, education, and work experience.  42

27
28   Case No.: 5:22-cv-02074-EJD
     ORDER GRATING IN PART & DEN. IN PART PL.'S MOT. FOR SUMM. J.; DEN.
     COMMISSIONER'S CROSS-MOT. FOR SUMM. J.

1    U.S.C. § 423(d)(2)(A).

2          In making a disability determination for disability benefits or supplemental security

3    income, the SSA follows a five-step "sequential evaluation process" to evaluate a claimant's

4    ability to do other work.  20 C.F.R. §§ 404.1520, 416.920.

5          1)  The first step considers whether the claimant is engaged in "substantial gainful

6              activity."  *Id.* §§ 404.1520(i), 416.920(4)(i).  If a claimant is currently employed, and

7              the work is considered "substantial gainful activity," then the SSA will find the

8              claimant not disabled "regardless of [claimant's] medical condition or [their] age,

9              education, and work experience."  *Id.* §§ 404.1520(b), 416.920(b).

10         2)  At the second step, the SSA considers whether the claimant has a "severe medically

11             determinable physical or mental impairment," meaning "any impairment or

12             combination of impairments which significantly limits [claimant's] physical or mental

13             ability to do basic work activities."  *Id.* §§ 404.1520(c), 416.920(c).  If the impairment

14             is not severe, there is no finding of disability.  *Id.*

15         3)  At step three, the SSA considers whether the claimant "meets the duration requirement

16             and is listed in appendix 1 or is equal to a listed impairment(s)," in which case the

17             claimant will be found disabled.  *Id.* §§ 404.1520(d); 416.920(d).

18         4)  For a claimant whose impairments do not meet or equal an impairment on the list, the

19             SSA will assess their "residual functional capacity" ("RFC") and compare it with the

20             physical and mental demands of claimant's past relevant work.  *Id.* §§ 404.1520(e);

21             416.920(e).  If a claimant can still do past relevant work, they are not disabled.  *Id.* §§

22             404.1520(f); 416.920(f).

23         5)  At the final step, claimants whose impairments prevent them from doing past relevant

24             work will be evaluated under the same RFC assessment with their vocational factors,

25             *i.e.*, age, education, and work experience, to determine whether the claimant can make

26             an adjustment to other work.  *Id.* §§ 404.1520(g)(1); 416.920(g)(1).  Those who cannot

27

make an adjustment to other work will be found "disabled."

"The [claimant] carries the initial burden of proving a disability." *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). Consequently, the burden of proof is on the applicant as to steps one to four. As to step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If an applicant is found to be "disabled" or "not disabled" at any step in the sequence, there is no need to consider subsequent steps. *Id.* If the applicant proves a prima facie case of disability, the burden shifts to the Commissioner to establish that the applicant can perform a "significant number of other jobs in the national economy." *Thomas*, 278 F.3d at 955. "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Id.*

## III.    THE ALJ'S FINDINGS

At step one, the ALJ found that Muniz did not engage in substantial gainful activity during the relevant period. Tr. 1315.

At step two, the ALJ found that since the alleged onset of disability Muniz suffers from the following impairments, which are "severe in combination" and limit Muniz's ability to perform basic work activities:

> [O]besity with history of 2007 gastric bypass; osteoarthritis of left knee; bursitis of right trochanteric bursa; fibromyalgia; and bilateral carpal tunnel syndrome status-post January 2019 right side carpal tunnel release and status-post left-side October 2019 release; degenerative disc disease of the lumbar spine without stenosis; diabetes mellitus; hypothyroidism; asthma; major depressive disorder, and anxiety disorder.

*Id.* (citations omitted).

At step three, the ALJ found Muniz' impairments, individually or in combination, do not meet or equal any listed impairments. Tr. 1316. The ALJ determined that Muniz has the RFC to perform "an eroded range of sedentary work," meaning Muniz can:

> [L]ift and carry up to 20 pounds occasionally and 10 pounds frequently; sit for about 6 hours total in an 8-hour workday; stand and walk for not more than 4 hours cumulatively, and after one hour of standing/walking must have the option to sit for 5 minutes while remaining on task. The claimant can occasionally balance, stoop, and

United States District Court
Northern District of California

Case No.: 5:22-cv-02074-EJD
ORDER GRATING IN PART & DEN. IN PART PL.'S MOT. FOR SUMM. J.; DEN.
COMMISSIONER'S CROSS-MOT. FOR SUMM. J.
5

1
2
3
4

> climb ramps and stairs, but cannot climb ladders, ropes, or scaffolding, work near hazards such as at unprotected heights or close to dangerous moving machinery, nor kneel, crouch, or crawl. The claimant can frequently perform handling, fingering, and feeling tasks, and should not more than occasionally be exposed to pulmonary irritants such as fumes, odors, or dusts. In addition, the claimant can perform simple work with no production pace such as assembly line work.

5   Tr. 1317–18.

6       At step four, the ALJ found that Muniz could not return to her past relevant work as a bus

7   driver or cashier since the alleged date of her disability onset on September 6, 2017.  Tr. 1326.

8       At step five, the ALJ found that on December 11, 2020, Muniz's age category changed to

9   an individual of advanced age pursuant to 20 C.F.R. §§ 404.1563 and 416.963, and therefore

10  found her "disabled" on that date through the date of the decision because "there are no jobs that

11  exist in significant numbers in the national economy that the claimant could perform."  Tr. 1327–

12  28.  In reaching this conclusion the ALJ applied Medical-Vocational Rule 201.19, which provides

13  that a person with "limited or less" education and unskilled previous work experience who is

14  closely approaching advanced age (ages 50-54) is considered disabled.  *See* 20 C.F.R. § 404.1563.

15      However, the ALJ concluded that there were jobs that existed in significant numbers in the

16  national economy prior to the date that Muniz's age category changed on December 11, 2020 that

17  she could have performed.  Tr. 1327.  Based on the testimony of the vocational expert ("VE"), the

18  ALJ found Muniz could perform three occupations prior to December 11, 2020: Lens Gauger

19  (DOT # 716.687-030) with 23,000 U.S. jobs; Addressor (DOT # 209.587-010) with 48,000 U.S.

20  jobs; and Table Worker (DOT # 739.687-182) with 24,000 U.S. jobs.  Tr. 1328; *see* Tr. 1366.

21  **IV.   DISCUSSION**

22      Muniz argues that in reaching the decision the ALJ: (1) failed to properly consider Muniz's

23  mental impairments in the RFC; (2) improperly equated mental status examinations with a less

24  limited degree of a Major Depressive Disorder; (3) improperly relied on the absence of

25  hospitalizations or psychiatrist holds in assessing the severity of Muniz's mental impairments; and

26  (4) failed to properly consider that Muniz suffers from chronic pain syndrome.  The Court

27

28

United States District Court
Northern District of California

1     considers each argument in turn.

2         **A.     The ALJ Did Not Properly Consider Plaintiff's Moderate Limitation in
               Concentrating and Coping with Stress in her RFC.**

3         First, Muniz asserts that the ALJ erred at step five by failing to properly address the impact

4     of a moderate limitation in concentration and coping with the usual stress in a work setting on

5     Muniz's ability to perform work activity on a regular and sustained basis.

6         "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct

7     RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  "Where an

8     ALJ accords substantial or great weight to a physician's opinion, he must either incorporate their

9     findings into the RFC or offer an explanation for why he chose not to accept them." *Wascovich v.

10    Saul*, No. 2:18-CV-659-EFB, 2019 WL 4572084, at *3 (E.D. Cal. Sept. 20, 2019) (citing *Rounds*,

11    807 F.3d at 1006).

12        In assessing Muniz's mental impairments (anxiety and depression), the ALJ considered

13    and weighed the testimony of the mental evaluators and physicians.  The ALJ found the State

14    consultative psychologist Janine Marinos, Ph.D's assessment persuasive.  Marinos conducted a

15    psychological evaluation of Muniz on February 16, 2018.  Tr. 417.  Marinos opined that "the

16    claimant appeared able to understand, remember, and carry out simple job instructions and interact

17    appropriately with others, but may have moderate difficulty maintaining concentration and coping

18    with usual stresses in a job setting."  Tr. 1324.  The ALJ found this assessment to be persuasive

19    given Muniz's history of anxiety and severe depression and stated that the moderate mental

20    limitations "would reasonably support limitations in stress and complexity of work, as adopted

21    into the residual functional capacity finding."  Tr. 1325.

22        Despite the ALJ purportedly adopting the mental limitations recommended by Marino, the

23    parties dispute whether the RFC reflects these limitations.  The decision describes the RFC as

24    follows:

25            [S]ince September 6, 2017, the claimant has the residual functional
               capacity to perform as eroded range of sedentary work as defined in
26             20 CFR 404.1567(b) and 416.967(b) . . . . **In addition, the claimant
               can perform simple work with no production pace such as**
27

Case No.: 5:22-cv-02074-EJD
28    ORDER GRATING IN PART & DEN. IN PART PL.'S MOT. FOR SUMM. J.; DEN.
      COMMISSIONER'S CROSS-MOT. FOR SUMM. J.

United States District Court
Northern District of California

**assembly line work**.

Tr. 1317–18 (emphasis added).  The issue lies in the final sentence of the RFC finding that "the claimant can perform simple work with no production pace such as assembly line work."  Muniz contends that this sentence fails to incorporate the mental limitations the ALJ claimed to adopt.

Specifically, Muniz contends that the ALJ failed to address any of the specific abilities provided in Social Security Ruling ("SSR") 85–15, which provides a framework for evaluating nonexertional impairments, such as mental, hearing, or visual impairments, stress, and mental illness.  MSJ 12–13.  *See* SSR 85–15.  Although "Social Security Rulings do not have the same force and effect as the statute or regulations, they. . . are to be relied upon as precedents in adjudicating cases."  *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (quoting 67 Fed. Reg. at 57860).  SSR 85-15 states that individuals suffering from mental illness may "have difficulty accommodating to the demands of work and work-like settings" and therefore a person's ability to cope with stress in the workplace is "highly individualized" and requires "thoroughness in evaluation on an individualized basis."  *Id.* at 5.  Because responses to work stressors are so individualized, "the mentally impaired may have difficulty meeting the requirement of even so-called 'low stress' jobs."  *Id.*  Thus, SSR 85-15 requires that impairment-related limitations arising from an individual's response to the demands of work are reflected in the RFC assessment.  *Id.*

Muniz asserts that the ALJ did not properly consider how her mental limitations—her moderate difficulty concentrating and coping with usual job stresses—would impact her work capabilities; rather, the ALJ interpreted "moderate difficulty" to mean that Muniz could perform unskilled work with no assembly lines.  MSJ 14.  While an ALJ need not "explicitly transcribe the limitation in the RFC," the ALJ must "account for it in [their] 'translation.'"  *Wascovich*, 2019 WL 4572084, at 3.  The Commissioner argues that the last sentence properly considers her mental limitations.  Cross-MSJ 2.  However, Muniz contends that, as explained by SSR 85-15, skill level does not necessarily dictate the stress level for an individual suffering from mental illness.  *Id.*  Muniz asserts that the RFC fails to reflect her mental limitations by considering only "unskilled work with no assembly lines."

United States District Court
Northern District of California

1    Muniz cites *Perkins v. Astrue* in support of her argument that the ALJ failed to properly

2    assess her mental limitations despite purporting to adopt them in the RFC.  No. 12-CV-0634-RNB,

3    2012 WL 4755402 (C.D. Cal. Oct. 5, 2012).  In *Perkins*, the district court found that "the ALJ

4    erred in failing to make an individualized evaluation of the effects of stress on plaintiff's ability to

5    work and/or in failing to include this additional limitation in her RFC assessment."  *Id.* at 2 (citing

6    *Lancellotta v. Sec. of HHS,* 806 F.2d 284, 285 (1st Cir. 1986)).  The court rejected the

7    Commissioner's argument that a "preclusion of fast-paced work adequately addressed plaintiff's

8    limitation[]" to a low-stress environment and noted that, according to SSR 85–15, "the restrictions

9    of a particular type of job and a person's individualized ability to cope with stress from such jobs

10   should not be conflated."  *Perkins*, 2012 WL 4755402 at 2.  This Court is persuaded by *Perkins*'s

11   reasoning; here, the ALJ similarly conflated Muniz's ability to cope with stress with production

12   pace.  The ALJ erred by failing to make any findings as to "the nature of [plaintiff's] stress, the

13   circumstances that trigger it, or how those factors affect his ability to work."  *Lancellotta*, 806

14   F.2d at 285.

15   The Commissioner argues that *Perkins* is distinguishable because the doctor in *Perkins*

16   identified "specific limitations" in his assessment of claimant's mental impairments; according to

17   the Commissioner, Marinos did not make specific limitation findings as to Muniz, "only a general

18   finding of a moderate limitation."  Cross-MSJ 3.  The Court disagrees.  Here, Marinos opined that

19   Muniz could perform "simple job instructions and interact appropriately with others," but that

20   Muniz "may have moderate difficulty maintaining concentration and coping with usual stresses in

21   a job setting."  Tr. 1324.  Marinos conveyed that Muniz's performance at work may be moderately

22   impacted by her ability to concentrate and cope with stress.  Thus, the ALJ must consider Muniz's

23   ability to concentrate and her stressors and responses to stress-causing conditions.[1]

24

25   ────────────────

[1] The ALJ's second hypothetical to the VE provides further support that the ALJ intended to
accommodate Plaintiff's moderate difficulty maintaining concentration and coping with usual
26   work stress in her RFC because the ALJ asked what jobs would be available to a similarly situated
individual who was also "off task 15% of the workday."  Tr. 1367; *Crump v. Saul*, 932 F.3d 567,
27   570 (7th Cir. 2019) ("[T]he hypothetical posed to the VE and the ALJ's RFC assessment must

28   ORDER GRATING IN PART & DEN. IN PART PL.'S MOT. FOR SUMM. J.; DEN.
COMMISSIONER'S CROSS-MOT. FOR SUMM. J.

1    Citing *Hoopai v. Astrue*, 499 F.3d 1071 (9th Cir. 2007), the Commissioner also argues that

2    an ALJ need not provide in his RFC finding for every possible mild to moderate limitation.

3    Cross-MSJ 3.  The Commissioner asserts that an ALJ is only required to "rate the degree of

4    functional limitation" using the § 404.1520(c)(3) factors: "[u]nderstand, remember, or apply

5    information; interact with others; concentrate, persist, or maintain pace; and adapt or manage

6    oneself."  20 C.F.R. § 404.1520(c)(3); *see Hoopai*, 499 F.3d at 1078.  This is incorrect; while the

7    ALJ must consider the § 404.1520(c)(3) factors, SSR 85-15 also mandates consideration of "[a]ny

8    impairment-related limitations created by an individual's response to demands of work" in the

9    RFC assessment.  *See Silva v. Saul*, No. 2:19-CV-06805-VEB, 2020 WL 13304057, at *7 (C.D.

10   Cal. Sept. 29, 2020).  Because the ALJ purported to adopt the recommended mental limitations in

11   the RFC assessment, the ALJ must make specific findings as to these limitations; the ALJ erred by

12   failing to do so.

### 1.     The ALJ's Error Was Not Harmless.

13   Since the Court has determined "that the agency erred in some respect in reaching a

14   decision to deny benefits," the Court must now decide whether the error was harmless.  *Hoa Hong*

15   *Van v. Barnhart*, 483 F.3d 600, 605 (9th Cir. 2007) (alterations omitted).  The Commissioner

16   contends that, even if the Court finds the ALJ erred, such error was harmless.  Cross-MSJ 4.

17   "A decision of the ALJ will not be reversed for errors that are harmless."  *Burch v.*

18   *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  An ALJ's error is "harmless" when it is "it is

19   inconsequential to the ultimate nondisability determination."  *Treichler v. Comm'r of Soc. Sec.*

20   *Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quotations and citation omitted).  "A reviewing

21   court may not make independent findings based on the evidence before the ALJ to conclude that

22   the ALJ's error was harmless."  *Brown-Hunter*, 806 F.3d at 492.  Rather, the court is "constrained

23   to review the reasons the ALJ asserts."  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

_____

incorporate all of the claimant's limitations supported by the medical record, including even
moderate limitations in concentration, persistence or pace.") (quotations and citation omitted).

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Here, it is clear from the decision that the ALJ intended to adopt Marino's assessed mental limitations into Muniz's RFC.  *See* Tr. 1325.  For the reasons discussed above, the ALJ failed to properly incorporate Muniz's mental limitations.  Muniz contends that her limitations relating to moderate difficulty maintaining concentration and coping with usual stress in a work setting translate to a person spending about 15 percent of the workday off task, which would render her unemployable.  MSJ 13.  She draws this conclusion from the testimony of the VE, who, in considering the second hypothetical posed by the ALJ in which an individual was the same age and had all the same physical limitations as Muniz in addition to "be[ing] off task 15% of the workday," concluded that such limitations "would essentially render that person unemployable." Tr. 1367.  Despite the VE's testimony, the ALJ found that there were three jobs in the national economy "with no production pace such as assembly line work" that Muniz could perform prior to December 2020.

Muniz seems to suggest that, had the ALJ properly included Muniz's mental impairments in the RFC, the VE's testimony that a similarly situated individual who spent 15 percent of the workday off task is "unemployable" means that there were *no* jobs that exist in significant numbers in the national economy that Muniz could perform from her disability onset date through December 10, 2020.  Under these circumstances, the ALJ would have found Muniz disabled at step five of the analysis and therefore the error would not be harmless.

**B.      The Evidence Supports the ALJ's Finding Regarding Plaintiff's Mental Impairments.**

Next, Muniz argues that the ALJ improperly assessed Muniz's mental impairments for several reasons.  MSJ 15–17.

**1.      Lack of Psychiatric Hospitalizations or Crisis Holds**

First, Muniz argues that the ALJ improperly assessed the severity of her mental impairment by relying on the absence of hospitalizations or psychiatric holds.  MSJ 17.  Marino reported Muniz has never been psychiatrically hospitalized.  Tr. 416.  In determining that "greater or more restrictive mental limitations are not persuasively supported by the overall medical

1    evidence," the ALJ reasoned that "the record does not document greater psychiatric intervention

2    such as hospitalization or psychiatric crisis holds." Tr. 1325.  Muniz contends that the fact that

3    she was not hospitalized or placed in a psychiatric crisis hold does not necessarily mean that she

4    does not have a mental impairment that would impact her ability to work. *Id.*

5         The Ninth Circuit permits "evidence of 'conservative treatment' . . . to discount a

6    claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751

7    (9th Cir. 2007).  Conservative treatment may include over-the-counter medication, for example.

8    *Matthews v. Astrue*, No. 11-CV-01075-JEM, 2012 WL 1144423, at *9 (C.D. Cal. Apr. 4, 2012).

9    However, "[c]ourts in this circuit have found that psychiatric hospitalization is not a benchmark

10   for conservative treatment." *P.E. v. Saul*, 445 F. Supp. 3d 306, 334 (N.D. Cal. 2020) (citing

11   *Morales v. Berryhill*, 239 F. Supp. 3d 1211, 1216 (E.D. Cal. 2017) ("A claimant may suffer from

12   mental health impairments that prevent him from working but do not require psychiatric

13   hospitalization.")).  Any findings by the ALJ with respect to the severity of Muniz's anxiety and

14   depression may not be based solely on Muniz's lack of psychiatric hospitalization. *See Le v.*

15   *Astrue,* 318 Fed.Appx. 552, 554 (9th Cir. 2009).

16        Here, the ALJ did not rely solely on Muniz's lack of psychiatric intervention.  The ALJ

17   considered all of the evidence regarding Muniz's depression and anxiety symptoms, medication,

18   and treatment.  The decision notes that Muniz: has a history of childhood abuse, Tr. 1318; has

19   documented "mental health treatment for symptoms of depression with depressed mood since at

20   least 2017," *id.*; has reported "significant depression and insomnia," *id.*; has relayed "passive

21   suicidal ideation without intent," *id.* at 1319; has a "PHQ-9 score of '19'" representing

22   "moderately severe" depression, *id.*; takes Wellbutrin daily, *id.* at 1326; experiences panic attacks

23   and gets scared, *id.*; and that Muniz has "not seen her psychological specialist since 4-5 months

24   ago, and that she was talking with her mother instead of using professional help," *id.*

25        After considering Muniz's mental evaluations, the ALJ determined that her "symptoms are

26   appropriately addressed by mental health treatment appointments and medication." Tr 1325.  The

United States District Court
Northern District of California

1    Ninth Circuit has held that "impairments that can be controlled effectively with medication are not

2    disabling for the purpose of determining eligibility for SSI benefits."  *Warre v. Comm'r Soc. Sec.*,

3    439 F.3d 1001, 1006 (9th Cir. 2006).

4          Given Muniz's minimal mental health treatment consisting of anti-depressant medication

5    and appointments with her psychiatrist and considering Muniz's mental evaluations were "within

6    normal limits," the ALJ could have adopted the opinion of the state examiner who found that

7    Muniz is "moderately limited" with respect to her ability to concentrate and cope with usual stress

8    but concluded that greater or more restrictive mental limitation findings were not warranted.

9                    **2.    Mental Evaluations Within Normal Limits**

10         Second, Muniz argues that the ALJ improperly assessed her mental impairment by

11   focusing on the latter observation and equating her "normal" mental status reports with her ability

12   to function and the degree to which she is impaired.  MSJ 15.

13         On more than one occasion the ALJ relied on mental evaluation progress notes to

14   determine the severity of her mental impairment.  For example, the decision notes that:

15        • "In mental status evaluations, the claimant consistently
            demonstrated good eye contact, with **normal speech**." Tr.
16          1317.

17        • "Mental status evaluations were mostly **within normal limits**,
            but did at times indicate rambling speech with depressed and
18          anxious mood (Ex. 4F, p. 9)." Tr. 1318.

19        • "At a May 3, 2018 mental health appointment the claimant
            was observed to be 'tearful' with depressed and anxious
20          mood, but otherwise, mental status evaluation was **within
            normal limits**." Tr. 1319.

21   Muniz contends that these examinations are "not an assessment of a claimant's ability to function

22   in a work setting on a regular and continuing basis."  *Id.* at 16.  The Commissioner argues,

23   however, that Muniz as not shown that the ALJ's finding is not supported by substantial evidence

24   because evaluations of Muniz's mental status prior to December 2020 "indicate largely normal

25   findings."  Cross-MSJ 3–4 (citing Tr. 416, 427, 1317–18).

26         It has long been established that "[i]n analyzing a mental impairment. . . the Secretary must

27   consider the evidence in the case record—the mental status examination and psychiatric history."

Case No.: 5:22-cv-02074-EJD
28   ORDER GRATING IN PART & DEN. IN PART PL.'S MOT. FOR SUMM. J.; DEN.
     COMMISSIONER'S CROSS-MOT. FOR SUMM. J.

United States District Court
Northern District of California

1    *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994), *as modified on reh'g* (Apr. 7, 1994).  As long

2    as the treatment note observations are "read in context of the overall diagnostic picture the

3    provider draws" and consistent with this broader picture, the ALJ may properly rely on them.

4    *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quotations and citation omitted).

5         The notes taken during Muniz's mental evaluations support the ALJ's finding that on

6    balance her evaluations were within normal limits and the record did not support a finding of

7    greater or more restrictive mental impairments.  During Muniz's evaluation in May 2018, Swetha

8    Vajapay, PsyD, reported that Muniz was experiencing a recurrent episode of Major Depressive

9    Disorder but that she appeared well groomed and healthy, that her demeanor was pleasant,

10   cooperative, and her speech was rambling but otherwise normal.  Tr. 423, 427, 1318.  Although

11   she was tearful, her evaluation was within normal limits.  Tr. 427, 1318.  Marino similarly

12   reported that Muniz appeared well-dressed and groomed, maintained good eye contact, and was

13   alert and fully oriented during her evaluation.  Tr. 416.  Marino also reported that Muniz's

14   "thinking was linear and goal-directed," her speech was fluent and clear, and Muniz was otherwise

15   cooperative and pleasant.  *Id.*  Based on her assessment, Muniz had moderate limitations with

16   respect to her ability to concentrate and cope with stress but she could otherwise "understand,

17   remember, and carry out simple job instructions and interact appropriately with others."  Tr. 418.

18        Accordingly, Muniz has not shown that the ALJ's finding that her mental evaluations were

19   within normal limits were in error or that the ALJ improperly relied on these evaluations in

20   making her determination.

21        **3.    IQ Score**

22        Finally, Muniz argues that the ALJ improperly assessed her mental impairment by

23   equating Muniz's full-scale IQ score to the degree of severity of her mental impairments.  MSJ 16.

24   The ALJ wrote "despite the one-time full-scale IQ score, the claimant appeared able to understand,

25   remember, and carry out simple job instructions and interact appropriately with others, but may

26   have moderate difficulty maintaining concentration and coping with usual stresses in a job setting"

27

28   Case No.: 5:22-cv-02074-EJD
     ORDER GRATING IN PART & DEN. IN PART PL.'S MOT. FOR SUMM. J.; DEN.
     COMMISSIONER'S CROSS-MOT. FOR SUMM. J.

United States District Court
Northern District of California

(Tr. 1324).  Muniz asserts that appropriate tests to assess anxiety or depression include the Minnesota Multiphasic Personality Inventory, the Beck Anxiety Inventory, and the Beck Depression Inventory—none of which Marino used during Muniz's assessment.  *Id.* at 17. However, Muniz cites no case that holds an ALJ may not consider mental exams and IQ tests in addition to the other medical evidence in the record.

Accordingly, Muniz has failed to show that the ALJ's findings are not supported by the substantial evidence in the record.

### C.    The ALJ Provided "Clear and Convincing" Reasons for Rejecting Plaintiff's Testimony.

Next, Muniz argues that the ALJ improperly rejected Muniz's subjective testimony about the extent and severity of her symptoms.  MSJ 22.

"The ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)).  In assessing credibility, the ALJ must first determine "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  Then, if there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d at 1281.  These reasons must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958.  However, "once the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991).

An "ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195,

United States District Court
Northern District of California

1208 (9th Cir. 2001).  This ensures that "the claimant's testimony is not rejected arbitrarily." *Brown-Hunter*, 806 F.3d at 489.  To determine the credibility of a claimant's testimony regarding the severity of his or her symptoms, the Court should assess: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim*, 763 F.3d at 1163 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)).

### 1.     Plaintiff's Testimony Regarding Physical Impairments

Muniz argues that the ALJ cited general objective medical evidence as contradicting Muniz's alleged limitations but did not identify findings inconsistent with any of the specific functional deficits Muniz described.  MSJ 23.  However, the Commissioner argues that the ALJ properly considered the medical evidence and Muniz's behaviors in evaluating Plaintiff's testimony.  Cross-MSJ 8.  The Court agrees.

The ALJ identified which testimony regarding Muniz's alleged physical impairments that she found not credible and why.  For example, the ALJ found that there was a "lack of clinical findings to objectively quantify severity" of Muniz's sleep disorder; "no objective medical signs or laboratory findings to support a medically determinable impairment for the claimant's left shoulder;" that Muniz at times conflated chronic pain syndrome with reflex sympathetic dystrophy ("RSD") syndrome or complex regional pain syndrome ("CRPS"), and the record does not document RSD or CRPS; that her hypertension and high cholesterol were resolved by gastric bypass; and that her "left foot impairment circa November 2020, is not a durational medically determinable impairment."  Tr. 1325.

Plaintiff also argues that the ALJ "parsed and conflated" Muniz's testimony of her ability to engage in housework and other activities of daily living as indicative of her ability to perform sustained work.  MSJ 21.  The Ninth Circuit holds that although "a claimant need not vegetate in a

United States District Court
Northern District of California

dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (quotations and citations omitted). This includes participating in daily activities that "suggest some difficulty functioning," which "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1113 (9th Cir. 2012) (citing Turner, 613 F.3d at 1225).

Here, the ALJ determined that the record contains "no evidence that the claimant cannot perform her activities of daily living," such as cooking herself meals, and that she "holds a driver's license, can drive short distances, and lives independently." Tr. 1317, 1320. The evidence supports these findings, as Plaintiff testified to engaging in daily activities, such as making herself meals, and participating in recreational activities, such as camping and going on walks. Tr. 1320, 1326, 1642. Muniz also represented to Marino that she was able to bathe and dress herself and engage in light housekeeping and meal preparation. Tr. 415. Muniz's appearance and representations during her mental evaluation and parts of her testimony contradicts at least some of Muniz's testimony that her daughter must help her dress, bathe, and perform other daily activities or otherwise she goes days without grooming or caring for her personal hygiene because of her physical limitations. Tr. 38, 48.

In sum, substantial evidence supports the ALJ's finding that Muniz's statements concerning the intensity and limiting effects of her symptoms are not fully supported by the record, and the ALJ provided clear and convincing reasons for her finding. Accordingly, the ALJ properly discredited Muniz's testimony as to the severity and extent of her physical symptoms.

### 2.   Plaintiff's Testimony Regarding Mental Impairments

It is unclear whether Muniz suggests that the ALJ also failed to provide clear and convincing reasons for rejecting her testimony about the severity and effects of mental impairments. In an abundance of caution, the Court will address this argument in the context of

United States District Court
Northern District of California

1   Muniz's subjective testimony as well.

2          In concluding that the "intensity, persistence and limiting effects of [claimant's] symptoms

3   are not fully supported" by the record, the ALJ considered whether Muniz had received "greater

4   psychiatric intervention" such as hospitalization or a psychiatric crisis hold, and whether Muniz's

5   symptoms were "appropriately addressed by mental health treatment appointments and

6   medication." Tr. 1325.

7          Although a "lack of medical evidence cannot form the sole basis for discounting pain and

8   symptom testimony, it is a factor that the ALJ can consider in his credibility analysis." *Le v.*

9   *Astrue*, 318 F. App'x 552, 555 (9th Cir. 2009) (quotations and citation omitted) (cleaned up).  As

10  previously discussed, the ALJ did not solely rely on Muniz's lack of psychiatric hospitalization or

11  psychiatric holds in reaching her credibility determination. *See supra* Section IV.B.1.  The ALJ

12  also considered and concluded that Muniz's depression and anxiety were properly addressed by

13  mental health treatment.  The ALJ's conclusion is supported by the evidence supported by

14  substantial evidence in the record.  Muniz testified that she had been seeing a psychologist before

15  the pandemic and takes antidepressants daily.  Tr. 1364.  She had a few follow up appointments

16  since then but has been recently speaking to her mother rather than seeing a mental health

17  provider.  Tr. 1364, 58–59.  Muniz represented to the ALJ that speaking to professionals helped

18  and that she had schedule an appointment with her psychiatrist the following month.  Tr. 59.

19  Given the evidence in the record, the ALJ could have adopted the moderate limitations assessed by

20  Marino and concluded that the extent and severity of Muniz's alleged mental impairments were

21  not supported by the evidence.

22         Accordingly, substantial evidence likewise supports the ALJ's finding that Muniz's

23  statements concerning the intensity and limiting effects of her are not fully supported by the

24  record, and the ALJ provided clear and convincing reasons for her finding.

25         **D.     The ALJ Correctly Evaluated Plaintiff's Fibromyalgia and/or Chronic Pain
               Syndrome.**

26

27         Finally, Muniz contends that the ALJ incorrectly evaluated Muniz's fibromyalgia and/or

28  ORDER GRATING IN PART & DEN. IN PART PL.'S MOT. FOR SUMM. J.; DEN.
    COMMISSIONER'S CROSS-MOT. FOR SUMM. J.

United States District Court
Northern District of California

chronic pain syndrome, and that this error was not harmless.  MSJ 18.

The ALJ found that:

> The claimant appears at times to conflate chronic pain syndrome (1F/3) with sympathetic dystrophy syndrome/ complex regional pain syndrome, but per SSR 03-02p the conditions are not the same. The record does not document sympathetic reflex dystrophy (RSD) or complex regional pain syndrome (CRPS).

Tr. 1315.  Muniz argues that the medical evidence contradicts this finding because Muniz was diagnosed with chronic pain syndrome, prescribed medication to treat it, and even attended a chronic pain syndrome program.  MSJ 18.

Recognizing that fibromyalgia is "a complex medical condition," the SSA promulgated SSR 12-2p to provide guidance to adjudicators evaluating fibromyalgia.  Before an ALJ may find an individual with a medically determinable impairment of fibromyalgia as disabled, the ALJ must first "ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity," using the criteria established in SSR 12-2p. Specifically, SSR 12-2p uses the 1990 ACR Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria to determine whether a person has a medically determinable impairment of fibromyalgia.  The 1990 ACR Criteria for the Classification of Fibromyalgia requires that the individual has all three of the following: (1) a history of widespread pain, "that is, pain in all quadrants of the body"; (2) at least 11 positive tender points on physical examination, which "must be found bilaterally (on the left and right sides of the body) and both above and below the waist"; and (3) there must be "[e]vidence that other disorders that could cause the symptoms or signs were excluded."  SSR 12-2p, Title II(A).  The 2010 ACR Preliminary Diagnostic Criteria also requires (1) a history of widespread pain; (2) "[r]epeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome;" and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded."

United States District Court
Northern District of California

1        Here, the ALJ applied SR 12-2p which provides that the adjudicator cannot rely upon a

physician's diagnosis alone; fibromyalgia is a medically determinable impairment only "when

there is both a diagnosis and the elements of either the 1990 or 2010 ACR diagnostic criteria are

met."  Tr. 1322.  The ALJ found that neither the 1990 or the 2010 ACR diagnostic criteria were

satisfied because "the claimant's treating providers did not specifically rule out other causes for

the claimant's symptoms or routinely documented the symptoms required by this SSR."  Tr. 1323.

However, the ALJ nonetheless concluded that, based on Muniz's testimony, the fact that her

diagnosis predated the alleged onset date, and given the consistency of its appearance throughout

her medical records, "that this impairment is, in fact, a severe medically determinable impairment

despite an absence of specific notation of symptoms or tender points by the claimant's providers."

Tr. 1323.  The ALJ then considered Muniz's subjective symptoms and limitations as alleged, and

determined that to the extent that her symptoms were supported by the overall medical evidence as

a whole, they are addressed by the RFC.  Tr. 1326.

        Therefore, the Court cannot conclude that the ALJ failed to consider the medical evidence

regarding Muniz's chronic pain and/or fibromyalgia.  Substantial evidence supports the ALJ's

decision and Muniz has not shown that the ALJ committed any legal error.

### E.      The Appropriate Remedy is to Remand for Further Proceedings.

        The Commissioner argues that, should the Court overturn the SAA's decision, the proper

remedy is a remand for further administrative proceedings.  Cross-MSJ 10.

        A court has discretion to remand a case either for additional evidence and findings or to

award benefits.  *Swenson v. Sullivan,* 876 F.2d 683, 689 (9th Cir. 1989).  In cases where the SSA

erred in reaching its decision to deny benefits, sentence four of § 405(g) permits the court to

"revers[e] the decision of the Commissioner of Social Security, with or without remanding the

cause for a rehearing."  *Id.* (quotations omitted).  When "the record before the agency does not

support the agency action, . . . the agency has not considered all relevant factors, or . . . the

reviewing court simply cannot evaluate the challenged agency action on the basis of the record

United States District Court
Northern District of California

1  before it, the proper course, except in rare circumstances, is to remand to the agency for additional

2  investigation or explanation." *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985).

3  However, in some cases, the reviewing court may "reverse and remand a determination by the

4  Commissioner with instructions to calculate and award benefits." *Garrison*, 759 F.3d at 1019.

5  This remedy is appropriate only when it is "clear from the record that a claimant is entitled to

6  benefits." *Id.*

7        The Ninth Circuit applies a three-step framework to assess whether the reviewing court

8  should remand for an award of benefits rather than further proceedings.  Under the "credit-as-true

9  rule, the court may remand for an award of benefits where it finds that: "(1) the record has been

10  fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ

11  has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony

12  or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ

13  would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020.

14        Plaintiff requests that the Court remand for immediate payment of benefits.  However,

15  there remains an outstanding issue that precludes Muniz's request.  With respect to the ALJ's

16  finding that Muniz is moderately limited in concentration and coping with work stress, it is

17  unclear from the record before the Court if the ALJ found that a "moderate" impairment in

18  maintaining concentration and/or coping with usual work stress correlates to an individual being

19  "off task 15% of the workday," and if so, which of Muniz's symptoms or issues the ALJ

20  considered to cause her to be off-task 15% of the day.  *See Carter v. Berryhill*, No. 2:17-CV-

21  04399, 2018 WL 4169108, at *3 (S.D.W. Va. Aug. 30, 2018).  Nothing in the decision nor in

22  Marino's assessment indicates that Muniz's moderate difficult concentrating renders her "off task

23  15% of the workday," nor does Plaintiff offer any support for this number.  The Court is unable to

24  provide meaningful review without an explanation to clarify exactly why the ALJ posed a

25  hypothetical using 15%.

26        Accordingly, because further administrative proceedings would serve a useful purpose and

27

28  Case No.:   5:22-cv-02074-EJD
ORDER GRATING IN PART & DEN. IN PART PL.'S MOT. FOR SUMM. J.; DEN.
COMMISSIONER'S CROSS-MOT. FOR SUMM. J.

1   outstanding issues remain, the appropriate remedy is to remand for further proceedings.

2   **V.     CONCLUSION**

3          For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART

4   Plaintiff's motion for summary judgment.  Plaintiff's motion GRANTED to the extent that

5   Plaintiff requests remand for further administrative proceedings and her request for remand for

6   immediate award of benefits is DENIED.  The Commissioner's cross-motion for summary

7   judgment is DENIED.

8          This Commissioner's final decision is REVERSED and this case is REMANDED pursuant

9   to 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Order.

10          **IT IS SO ORDERED.**

11   Dated: December 6, 2023

12

13   _____

14   EDWARD J. DAVILA
     United States District Judge

15